UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

THOMAS SHIMMEL,

    Plaintiff,

v.

MICHIGAN DEPARTMENT OF
CORRECTIONS, *et al.*,

    Defendant.

_____/

Case No. 1:21-cv-358

Hon. Hala Y. Jarbou

**REPORT AND RECOMMENDATION**

Benjamin Shimmel ("Shimmel") died on December 5, 2019. At the time of his death, Shimmel was a prisoner in the custody of the Michigan Department of Corrections ("MDOC") at the Oaks Correction Facility (sometimes referred to as "ECF"). Thomas Shimmel, personal representative of the estate of Benjamin Shimmel, deceased ("plaintiff") filed this lawsuit against the MDOC and 15 individual defendants employed at ECF: Corrections Officer ("CO") John Farago; CO Jason Schultz; CO Latham Schlafley; CO Clayton Setzer; CO Andrew Tighe; CO Daniel Jorissen; CO William Fisk; CO Ben Snay; Sergeant ("Sgt") Gideon Mitchell; RN Addie Briske; RN William Drake; CO Kevin Hall; CO Daniel Antes; CO Brian Robel; and CO David Saunders. Compl. (ECF No. 1, PageID.4-6).[1] This matter is now before the Court on defendants' motion to dismiss and motion for summary judgment (ECF No. 30).

---

[1] The Court notes that plaintiff incorrectly referred to ECF as located in the Northern Division of the Western District of Michigan and that this case is venued in the Northern Division. ECF is located in Manistee County, which lies in the Southern Division. *See* 28 U.S.C. §102(b)(1). Although plaintiff filed this action in the Western District, he alleged in the "Jurisdiction and Venue" portion of the complaint that defendant MDOC "systematically operates and conducts business within the Eastern District of Michigan." PageID.3. Any amended complaint should correct these allegations to reflect that this lawsuit is being litigated in the Southern Division of the Western District of Michigan.

1

I.    **The complaint**

Shimmel had a long history of mental illness, including bipolar disorder, panic disorder, psychosis, anxiety, depression, and addiction to drugs and alcohol, which involved four psychiatric hospitalizations. Compl. (ECF No. 1, PageID.7). On or about December 2, 2019, the MDOC Bureau of Health Care Services evaluated Shimmel because he expressed suicidal thoughts and reported hearing voices telling him to kill himself. *Id.*[2] At that time, Shimmel stated that he wanted to "make a shank out of a paper clip" and then began scratching his wrist with a paperclip and a pen. *Id*. Shimmel reported suicide plans such as running to the fence so that guards would shoot him or punching someone so that he would be beaten to death. *Id*. Prison officials placed him on a moderate management plan for observation. *Id*.

On or about December 3, 2019, the MDOC re-evaluated Shimmel and kept him on the moderate risk plan. *Id*. at PageID.8. The MDOC transferred Shimmel from Central Michigan Correctional Facility (STF) to St. Louis Correctional Facility (SLF) for observation. *Id*. At that time, "[h]e was combative and he hit the ceiling of the showers with his open hands and knuckles, causing abrasions." *Id*. On or about December 4, 2019, ECF was notified that Shimmel was an intermediate suicide risk pending his transfer to that facility. *Id*. Plaintiff alleged that the MDOC transferred Shimmel the next day:

> On or about December 5, 2019, Mr. Shimmel was transferred to Oaks Corrections Facility [ECF] while placed on intermediate suicide risk and he was placed in segregation. Oaks Corrections Facility, including staff members John Farago, Jason Schultz, Latham Schlafley, Clayton Setzer, Andrew Tighe, Daniel Jorissen, William Fisk, Ben Snay, Gideon Mitchell, Addie Briske, William Drake, Kevin Hall, Daniel Antes, Brian Robel, and David Saunders, had notice that Mr. Shimmel had a history of mental health illness and that he had just reported suicidal thoughts and auditory hallucinations telling him to kill himself three days prior. Mr. Shimmel arrived at Oaks Corrections Facility at 3:25PM but the staff decided not to meet with him for an evaluation until the following day.

---

[2] Plaintiff does not allege when Shimmel entered into MDOC custody. Defendants' Exhibit A (ECF No. 31-2) indicates that Shimmel was sentenced on May 29, 2019, about six months before his death.

2

*Id*. On that date, CO Farago was responsible for conducting scheduled rounds in Shimmel's unit, Housing Unit 5 B-Lower. *Id*. at PageID.8-9, ¶ 32. At 9:46 p.m., Farago found Shimmel hanging from a bed sheet secured to a sprinkler head in his cell. *Id*. at PageID.9, ¶ 32. Shimmel died that day. *Id*. at PageID.2, ¶ 2.

While plaintiff's complaint names 15 individual defendants, there are no allegations of particular wrongdoing made against any particular defendant. The gist of plaintiff's allegations consists of conclusory allegations that defendants were ECF employees and that all are responsible for Shimmel's death.

Plaintiff alleged that defendants CO Farago, CO Schultz, CO Schlafley, CO Setzer, CO Tighe, CO Jorrisen, CO Snay, CO Hall, CO Fisk, Sgt. Mitchell, RN Briske and RN Drake "were responsible for the safety and wellbeing of the inmates at Oaks Corrections Facility on December 5, 2019, when Mr. Shimmel was left alone as a known suicide risk and committed suicide," that "Shimmel displayed a disheveled appearance, depressed mood, discouraged attitude, poor reasoning, poor impulse control, poor judgment, and poor insight," and that these defendants "should have noticed and then addressed his needs accordingly." *Id*. at ¶¶ 33-34.

Plaintiff alleged that "[a]t all relevant times" defendants Farago, Schultz, Schlafley, Setzer, Tighe, Jorrisen, Snay, Hall, Fisk, Mitchell, Briske and Drake "deprived Mr. Shimmel of proper care and attention, despite his known suicide risk," that "Shimmel clearly exhibited extreme mental health stressors and suicidal ideation, which [these defendants] should have considered when leaving him alone and allowing him to commit suicide while under their care," that these defendants "had a constitutional duty to help, assist, and/or treat Mr. Shimmel for his deteriorating mental illness and/or to refer him to hospitalization, as they had actual notice of Mr. Shimmel's dire medical condition," that these defendants "completely failed to obtain the  necessary help

3

and/or treatment for Mr. Shimmel despite his obvious need for treatment," that these defendants "could have and should have provided Mr. Shimmel with treatment and care required for inmates with known suicidal ideation and his life could have and should have been preserved," and that these defendants "deliberately ignored, disregarded, and/or callously refrained from addressing or treating Mr. Shimmel's serious medical condition." *Id*. at PageID.9-11, ¶¶ 35, 36, 38-39, 40, 42. In addition, plaintiff alleged that "Mr. Shimmel endured mental pain and suffering for at least four days before he ultimately succumbed to his suicidal ideation and/or the effects thereof due to [these defendants'] deliberate indifference to his serious medical needs." *Id*. at PageID.10, ¶ 43.[3]

Plaintiff made one allegation which included CO Saunders, *i.e.*, that "[a]t all times relevant," defendants Farago, Schultz, Schlafley, Setzer, Tighe, Jorissen, Fisk, Snay, Hall, Antes, Robel, Saunders, Mitchell, Briske and Drake "deprived Mr. Shimmel of proper care and attention, despite his known suicide risk." *Id*. at PageID.9, ¶ 35.

In addition, plaintiff made general allegations that, "[w]hile Mr. Shimmel was a known suicide risk, Defendants failed to timely provide him a proper mental health examination and failed to treat and/or help Mr. Shimmel, although they had opportunity and a duty to do so," and that "Defendants' callous reason for refusing to provide Mr. Shimmel with the treatment he so desperately and obviously required was that Mr. Shimmel arrived at Oaks Correctional Facility 'late' at 3:25PM." *Id*. at PageID.10-11, ¶¶ 37, 41.

Plaintiff has set forth three counts for relief. In Count I ("42 U.S.C. § 1983 violation of the Eighth Amendment"), plaintiff alleged that "defendants" were deliberately indifferent to his serious medical needs. *Id*. at PageID.11-14.  In Count II ("Americans with Disabilities Act (ADA) violation -- failure to accommodate *As to Defendant MDOC* "), plaintiff alleged that the MDOC

---

[3] Plaintiff appears to allege that these defendants employed at ECF were responsible for Shimmel's "mental pain and suffering" endured for four days at other MDOC correctional facilities.  *See* discussion, *infra*.

4

violated his rights under the ADA, 42 U.S.C. § 12131, *et seq.*. *Id*. at PageID.14.  In this count, Shimmel alleged that he had a disability under the ADA of "major depressive disorder, suicidal ideation, and other psychological disorders" and that the MDOC failed to accommodate that disability. *Id*. at PageID.14-15.  In Count III ("Violation of § 504 of the Rehabilitation Act of 1973 *As to Defendant MDOC*"), Shimmel alleged that he is an individual with a disability and that the MDOC discriminated against him under the Rehabilitation Act, 29 U.S.C. § 794(a).  *Id*. at PageID.15-16.  Plaintiff seeks damages on all counts.  Defendants have filed a motion to dismiss and a motion for summary judgment. (ECF No. 30).

## II.    Defendants' motion to dismiss

A complaint may be dismissed for failure to state a claim if it fails to give the defendants a fair notice of the claim and the grounds upon which it rests.  *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 555 (2007).

> [A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations and quotation marks omitted).  In this regard, "an unadorned, the - defendant - unlawfully - harmed - me accusation" is insufficient to state a claim for relief.  *See Iqbal*, 556 U.S. at 678.

In making this determination, the complaint must be construed in the light most favorable to the plaintiff, and its well-pleaded facts must be accepted as true.  *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987).  In this regard, "[w]hen a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, public

5

records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. National Collegiate Athletic Association*, 528 F.3d 426, 430 (6th Cir. 2008).

### A.     Plaintiff's § 1983 claim against the 15 individual defendants

Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, which "provides a civil cause of action for individuals who are deprived of any rights, privileges, or immunities secured by the Constitution or federal laws by those acting under color of state law." *Smith v. City of Salem, Ohio*, 378 F.3d 566, 576 (6th Cir. 2004).  To state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that the defendant deprived him of this federal right under color of law. *Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988); 42 U.S.C. § 1983.

Here, plaintiff alleged that the individual defendants were deliberately indifferent to his serious medical needs.[4]  It is well established that an inmate has a cause of action under § l983 against prison officials for "deliberate indifference" to his serious medical needs, since the same constitutes cruel and unusual punishment proscribed by the 8th Amendment. *Estelle v. Gamble*, 429 U.S. 97 (l976).  A viable 8th Amendment claim consists of an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  A court considering such a claim must ask both if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation and if the officials acted with a sufficiently culpable state of mind. *Hudson v. McMillian*, 503 U.S. 1, 8 (1992).

The objective component requires the infliction of serious pain or failure to treat a serious medical condition.  *Id*. at 8-9.  "Because society does not expect that prisoners will have

---

[4] While plaintiff refers to "defendants," it appears that Count I seeks relief against only the individual defendants.

6

unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Id*. at 9.

The subjective component requires that the defendant act with deliberate indifference to an inmate's health or safety. *See Wilson v. Seiter*, 501 U.S. 294, 302-03 (1991). To establish the subjective component, the plaintiff must show that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. Mere negligence in diagnosing or treating a medical condition does not constitute an 8th Amendment violation. *Id*. at 835. "It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause." *Whitley v. Albers*, 475 U.S. 312, 319 (1986). Stated another way, the plaintiff must prove that each defendant acted with a "sufficiently culpable state of mind, equivalent to criminal recklessness." *Santiago v. Ringle*, 734, F.3d 585, 591 (6th Cir. 2013) (citing *Farmer*, 511 U.S. at 834, 839-40) (internal quotation marks omitted).

Here, the only facts alleged against an individual defendant appears in ¶ 32:

> Defendant Officer Farago was responsible for conducting scheduled rounds in Housing Unit 5 B-Lower, where Mr. Shimmel was located, on December 5, 2019. At 9:46PM, Defendant Officer Farago found Mr. Shimmel hanging from a bed sheet secured to a sprinkler head in his cell.

PageID.8-9. The basis of plaintiff's 8th Amendment claim is that Shimmel arrived at ECF at 3:25 p.m., CO Farago found Shimmel hanging in his cell at 9:46 p.m., and that 15 ECF employees were deliberately indifferent to his serious medical needs. Plaintiff's conclusory allegations fail to connect any particular defendant with any particular wrongful act. Plaintiff's complaint contains nothing more than "an unadorned, the - defendant - unlawfully - harmed - me accusation" which is insufficient to state a claim for relief. *See Iqbal*, 556 U.S. at 678.

7

The complaint is also inconsistent.  While Shimmel was only at ECF for about six hours on December 5, 2019, it appears that plaintiff seeks damages from ECF staff for Shimmel's "mental pain and suffering" which occurred at other MDOC institutions during the four days previous to his death.  *See* Compl. at PageID.11, ¶ 43.  There is no basis for plaintiff to sue ECF staff for previous incidents which occurred at other MDOC correctional facilities.

In his response, plaintiff contends that the Court should not consider the exhibits in addressing the motion to dismiss.  *See* Response (ECF No. 33, PageID.304-305, 312.).  The Court disagrees. A complaint must contain sufficient factual matter, which, accepted as true, states a claim to relief that is plausible on its face.  *See Iqbal*, 556 U.S. at 678.  As discussed, the only fact which plaintiff alleged against a particular defendant is that while doing rounds in the unit, CO Farago discovered Shimmel hanging in his cell at about 9:46 p.m.  Compl. at ¶ 32.  In an attempt to determine why plaintiff is suing 15 individual defendants, the Court properly considered the MDOC records related to Shimmel's death, *i.e.*, Shimmel's MDOC medical and mental health records for the last week of his life (ECF No. 31-6), the MDOC critical incident report related to Shimmel's suicide (ECF No. 31-3), and the autopsy report (ECF No. 31-5).  *See Bassett*, 528 F.3d at 430 ("When a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein.").

A review of these documents indicates that defendants Schultz, Setzer, Tighe, Jorisson, Hall, Mitchell, Schlafley, Antes, Drake, Briske, Fisk and Snay responded to assist defendant Farago in attempting to revive Shimmel.  *See* Critical Incident Report at PageID.139.

Defendants Robel and Saunders arrived after Shimmel was pronounced deceased. *Id*. It would appear that plaintiff's complaint simply sued all of the ECF staff who responded to the emergency.

Plaintiff's boilerplate allegations fail to state a cause of action against the 15 individual defendants. However, given Shimmel's mental health history prior to his transfer to ECF, the critical incident report, and the autopsy, plaintiff may be able to allege a cause of action. *See Troutman v. Louisville Metro Department of Corrections*, 979 F.3d 472, 482-83 (6th Cir. 2020) ("An inmate's psychological needs may constitute serious medical needs, especially when they result in suicidal tendencies. A plaintiff meets the objective prong of the Eighth Amendment analysis by showing that the inmate showed suicidal tendencies during the period of detention or that he posed a strong likelihood of another suicide attempt.") (internal quotation marks and citations omitted). Accordingly, the motion to dismiss plaintiff's § 1983 claims against the 15 individual defendants should be granted without prejudice, and plaintiff should be allowed to file an amended complaint.

      **B.**      **Plaintiff's ADA and Rehabilitation Act claims against the MDOC**

The ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

> To establish a prima facie case of intentional discrimination under Title II of the ADA, a plaintiff must show that: (1) she has a disability; (2) she is otherwise qualified; and (3) she was being excluded from participation in, denied the benefits of, or subjected to discrimination under the program because of her disability.

*Anderson v. City of Blue Ash*, 798 F.3d 338, 357 (6th Cir. 2015) (footnote omitted). To establish a prima facie case of discrimination under the Rehabilitation Act, a plaintiff must show these three

9

elements and an additional element, (4) "that the program receives federal financial assistance." *See Gohl v. Livonia Public Schools School District*, 836 F.3d 672, 682 (6th Cir. 2016).

Plaintiff has failed to allege the elements of either an ADA claim or Rehabilitation Act claim against the MDOC. Plaintiff bases both claims on an allegation in ¶ 42 of the complaint that defendants "could have and should have provided [Benjamin] with treatment and care required for inmates with known suicidal ideation." Plaintiff's Response (ECF No. 33, PageID.311-312). This allegation does not identify that Shimmel had a disability, does not identify a "program," does not allege the basis for a claim (participation in the program, denial of the benefits of the program, or discrimination under the program), and does not allege that Shimmel was "otherwise qualified" for the unidentified program. Plaintiff's claim is one of inadequate medical screening of a prisoner for suicidal tendencies, *see Troutman*, 979 F.3d at 482-83, not discrimination under either the ADA, *see Anderson*, 798 F.3d at 357, or the Rehabilitation Act, *see Gohl*, 836 F.3d at 682. Accordingly, plaintiff's claims that the MDOC violated the ADA and the Rehabilitation Act should be dismissed.

### III. Defendants' motion for summary judgment

#### A. Legal standard

Defendants have also filed a motion for summary judgment with respect to the § 1983 claims against the 15 individual defendants.[5] "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled

---

[5] In his response, plaintiff characterizes defendants' motion for summary judgment as an improper motion to dismiss, stating that, "[i]f this Court decides to consider the exhibits, which are matters outside the pleadings, Defendants' Motion to Dismiss must be treated as a Motion for Summary Judgment under Rule 56." *See* Plaintiff's Response (ECF No. 33, PageID.312). Contrary to plaintiff's characterization, defendants filed and briefed separate motions to dismiss and for summary judgment.

10

to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further provides that a party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

Each individual defendant executed a declaration in support of the motion for summary judgment. In their declarations, defendants Antes, Fisk, Hall, Robel, Saunders, Schlafley, Setzer, Schultz, Snay, Tighe, and Jorissen, each stated that he had no interaction with Shimmel, "had no knowledge that Shimmel's psychological needs were manifesting themselves into suicidal tendencies" and "was not cognizant of a significant likelihood that Shimmel was likely to imminently seek to take his own life." *See* Antes Decl. at PageID.245; Fisk Decl.at PageID.257; Hall Decl. at PageID.260; Robel Decl. at PageID.263; Saunders Decl. at PageID.266;

11

Schlafley Decl. at PageID.269; Setzer Decl. at PageID.272; Schultz Decl. at PageID.275; Snay Decl. at PageID.278; Tighe Decl.at PageID.281; and Jorissen Decl. at PageID.287.

Four defendants stated that they did interact with Shimmel.  In his declaration, RN Drake stated that,

> He encountered Shimmel in the prison health care clinic when Shimmel arrived at Oaks Correctional Facility at approximately 15:25 hours on December 5, 2019.  Shimmel denied having any health complaints or thoughts of self-harm. Moreover, there was nothing about his appearance, speech, or behavior that caused me any concern that he was at risk for self-harm.

Drake Aff. at PageID.251.

In his declaration, Sgt. Mitchell stated that,

> He had a brief encounter with Shimmel before Shimmel committed suicide. At approximately the 18:30 time frame on December 5, 2021, he received a class II misconduct from Housing Unit 5 and reviewed it with Mr. Shimmel. The interaction consisted of Mitchell waking Mr. Shimmel. Mitchell woke him up as he approached Shimmel's cell door. Shimmel approached the door. Mitchell conducted the review with Shimmel through the door. Mitchell asked Shimmel if he wanted to accept days or go to court. Shimmel replied, stating, "Fuck you and your days." Mitchell proceeded to ask Shimmel if he wanted to sign the review. Shimmel replied, again stating "Fuck you." Mitchell handed Shimmel the misconduct and closed his door slot and walked away. Mitchell had no further interactions with Shimmel until the call for assistance (when Shimmel was discovered hanging in his cell) came over the radio.

Mitchell Aff. at PageID.290.

In her declaration, RN Briske stated that,

> The only interaction she had with Shimmel before he committed suicide was during evening med pass in his housing unit on December 5, 2019.  The interaction was unremarkable.  Shimmel did not indicate that he had any health concerns or that he was contemplating self-harm.  I saw nothing about his appearance or speech that raised any concerns that he was a suicide risk.

Briske Aff. at PageID.248.

Finally, in his declaration, CO Farago stated that,

> He did not have any interaction with prisoner Benjamin Shimmel (MDOC ID# 576592) before Shimmel committed suicide in his cell on December 5, 2019, other than observing Shimmel while doing rounds in the housing unit. He had no conversations with Shimmel, and there was nothing about Shimmel's appearance or behavior that led me to believe he was a suicide risk. Moreover, he had no access to, or knowledge of, Shimmel's medical and mental health records and history. Thus, he was not cognizant of a significant likelihood that Shimmel was likely to imminently seek to take his own life.

Farago Aff. at PageID.254.

Plaintiff did not provide any evidence to rebut these declarations, which establish that only four defendants interacted with Shimmel before CO Farago discovered him. The only evidence linking defendants Schlafley, Schultz, Tighe, Jorissen, Setzer, Fisk, Snay Hall, Antes, Robel and Saunders to Shimmel is that they responded to assist after CO Farago discovered Shimmel. *See* Critical Incident Report (ECF No. 31-3). Given this record, there is no evidence that defendants Schlafley, Schultz, Tighe, Jorissen, Setzer, Fisk, Snay, Hall, or Antes violated Shimmel's Eighth Amendment rights. As discussed, defendants Robel and Saunders did not arrive on the scene until after Shimmel was pronounced deceased.

Plaintiff contends that defendants' motion for summary judgment should be denied as premature. Fed. R. Civ. P. 56 allows a party to seek summary judgment before discovery, providing that:

> **(b) Time to File a Motion.** Unless a different time is set by local rule or the court orders otherwise, a party may file a motion for summary judgment <u>at any time</u> until 30 days after the close of all discovery.

Fed. R. Civ. P. 56(b) (emphasis added).

Fed. R. Civ. P. 56 anticipates that parties may file motions for summary judgment before discovery by providing a mechanism for a non-moving party to ask the Court to defer consideration of a motion for summary judgment or to deny the motion when the non-moving party cannot present facts essential to justify opposition to the motion:

> **(d) When Facts are Unavailable to the Nonmovant.** If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order.

Fed. R. Civ. P. 56(d).

Here, plaintiff did not follow the procedure as set forth in Fed. R. Civ. P. 56(d). Rather, plaintiff restates his conclusory allegations "that the Defendants were deliberately indifferent to Benjamin's serious medical needs, and they were so reckless as to demonstrate a substantial lack of concern for whether an injury resulted" and states that "[b]ecause Plaintiff has not had an opportunity to engage in discovery that will produce facts in support of Plaintiff's claims, this Court should deny Defendants' premature Motion for Summary Judgment." Plaintiff's Response at PageID.313.

In *Moore v. Shelby County, Kentucky*, 718 Fed. Appx. 315 (6th Cir. 2017), the Sixth Circuit addressed the application of Fed. R. Civ. P. 56(d):

> We have observed that filing an affidavit that complies with Rule 56(d) is essential, and that in the absence of such a motion or affidavit, "this court will not normally address whether there was adequate time for discovery." *Plott* [*v. General Motors Corp.*, 71 F.3d 1190, 1196 (6th Cir. 1995)]. But we have also observed that although Rule 56 "provides courts with a useful method by which meritless cases may be discharged . . . . the benefits of this rule are quickly undermined if it is employed in a manner that offends concepts of fundamental fairness." *White's Landing* [*Fisheries, Inc. v. Buchholzer*, 29 F.3d 229, 231 (6th Cir 1994)]. Indeed, "a formal affidavit may not be required 'when a party has clearly explained its need for more discovery on a particular topic to the district court prior to or contemporaneously with the motion for summary judgment.'" *Unan v. Lyon*, 853 F.3d 279, 293 (6th Cir. 2017) (quoting *United States v. Rohner*, 634 Fed.Appx. 495, 504 (6th Cir. 2015)).

*Moore*, 718 Fed. Appx. at 319.

In this instance, it is unnecessary for the Court to consider whether summary judgment is appropriate with respect to meritless claims filed against the 11 defendants who did

14

not interact with Shimmel, or whether defendants have made a premature motion for summary judgment which offends concepts of fundamental fairness. As discussed, *supra*, plaintiff's complaint fails to state a cause of action and should be dismissed without prejudice pursuant to Fed. R. Civ. P. 12(b)(6). Any ruling on the motion for summary judgment is premature until plaintiff files an amended complaint. Accordingly, defendants' motion for summary judgment should be denied without prejudice.[6]

### IV. Recommendation

Accordingly, I respectfully recommend that defendants' motion to dismiss (ECF No. 30) be **GRANTED without prejudice** as to Count I (the § 1983 claims against the 15 individual defendants) and be **GRANTED with prejudice** as to Count II (the ADA claim against the MDOC) and Count III (the Rehabilitation Act claim against the MDOC).

I further recommend that defendants' motion for summary judgment (ECF No. 30) be **DENIED without prejudice**.

I further recommend that plaintiff be allowed to file an amended complaint to address the deficiencies in Count I.

Dated: January 26, 2022  /s/ Ray Kent
RAY KENT
United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

---

[6] As discussed, only four of the 15 individual defendants state that they interacted with Shimmel before CO Farago discovered him. Assuming that plaintiff will file an amended complaint, counsel should be mindful of Fed. R. Civ. P. 11(b), which provides in pertinent part that, "By presenting to the court a pleading . . . an attorney . . . certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances: . . . (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery [.]"